JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HDI Global Insurance Company

### DEFENDANTS

Silver Birch GP, LLC

**(b)** County of Residence of First Listed Plaintiff   Cook
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Deasey, Mahoney & Valentini, Ltd.
1601 Market Steeet, Suite 3400, Phila., PA 19103

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☒ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of **Judgment** | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | |
|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* |
| ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File | | | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
46 USC S 30701

Brief description of cause:
Breach of contract of carriage

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Engelmayer (SDNY)

DOCKET NUMBER   22-md-3028 (PAE)

DATE
12/21/22

SIGNATURE OF ATTORNEY OF RECORD
*George R. Zacharkow* (signature)

### FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| HDI Global Insurance Company | : | CIVIL ACTION |
| v. | : | |
| Silver Birch GP, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   (X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( )


| 12/21/22 | George R. Zacharkow | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** HDI Global Ins. Co. |
| 215-587-9400 | 215-587-9456 | GZacharkow@dmvlawfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02



**DEASEY, MAHONEY & VALENTINI, LTD.**
BY: **George R. Zacharkow**
    **Identification No. 32816**
**1601 Market Street, 34th Floor**
**Philadelphia, PA 19103**
**(215) 587-9400 (phone)**
**(215) 587-9456 (fax)**
**Email: GZacharkow@dmvlawfirm.com**

<div align="center">

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

</div>

**HDI GLOBAL INSURANCE COMPANY**        **CIVIL ACTION**
161 North Clark Street, 48th Floor
Chicago, Illinois 60601

        *Plaintiff*

    v.

**SILVER BIRCH GP, LLC**                 **NO.**
510 Walnut Street
Philadelphia, Pennsylvania 19106

        *Defendant*

<div align="center">

### RULE 7.1 DISCLOSURE STATEMENT
(Civil Action)

</div>

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff, HDI Global

Insurance Company makes the following disclosure:

1.      Is the party a non-governmental corporate party.

         __X__ YES          _____ NO

2.      If the answer to Number 1 is "yes," list below any parent corporation or state that there is
no such corporation.

       **HDI Global Insurance Company is an Illinois domestic commercial property and
casualty insurer wholly owned by HDI Global Network AG.  HDI Global Network AG is
owned by HDI Global SE. HDI Global SE is owned by Talanx AG. Talanx AG, a publicly
traded company, is the ultimate parent of HDI Global Insurance Company.**

3.      If the answer to Number 1 is "yes," list below any publicly held corporation that owns 10% or more of the party's stock or state that there is no such corporation:

**As identified in 2. above, Talanx AG, a publicly traded company, is the ultimate parent of HDI Global Insurance Company.**

The undersigned party understands that under Rule 7.1 of the Federal Rules of Civil

Procedure, it must promptly file a supplemental statement upon any change in the information

that this statement requests.


**DEASEY, MAHONEY & VALENTINI, LTD.**


BY:   _/s/ George R. Zacharow_____
                George R. Zacharkow (GRZ 7099)
Dated:  December 21, 2022        Attorneys for Plaintiff

**DEASEY, MAHONEY & VALENTINI, LTD.**
BY:  **George R. Zacharkow**
      **Identification No. 32816**
**1601 Market Street, 34ᵗʰ Floor**
**Philadelphia, PA 19103**
**(215) 587-9400 (phone)**
**(215) 587-9456 (fax)**
**Email:  GZacharkow@dmvlawfirm.com**

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

</div>

**HDI GLOBAL INSURANCE COMPANY**                    **CIVIL ACTION**
161 North Clark Street, 48ᵗʰ Floor
Chicago, Illinois 60601

          *Plaintiff*

    *v.*

**SILVER BIRCH GP, LLC**                                             **NO.**
510 Walnut Street
Philadelphia, Pennsylvania 19106

          *Defendant*

<div align="center">

**RULE 7.1 DISCLOSURE STATEMENT**
(Civil Action)

</div>

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff, HDI Global

Insurance Company makes the following disclosure:

1.      Is the party a non-governmental corporate party.

          __X__ YES                _____ NO

2.      If the answer to Number 1 is "yes," list below any parent corporation or state that there is
no such corporation.

          **HDI Global Insurance Company is an Illinois domestic commercial property and
casualty insurer wholly owned by HDI Global Network AG.  HDI Global Network AG is
owned by HDI Global SE. HDI Global SE is owned by Talanx AG. Talanx AG, a publicly
traded company, is the ultimate parent of HDI Global Insurance Company.**

3.      If the answer to Number 1 is "yes," list below any publicly held corporation that owns 10% or more of the party's stock or state that there is no such corporation:

**As identified in 2. above, Talanx AG, a publicly traded company, is the ultimate parent of HDI Global Insurance Company.**

The undersigned party understands that under Rule 7.1 of the Federal Rules of Civil Procedure, it must promptly file a supplemental statement upon any change in the information that this statement requests.

**DEASEY, MAHONEY & VALENTINI, LTD.**

BY:    /s/ George R. Zacharow
       George R. Zacharkow (GRZ 7099)
Dated:  December 21, 2022      Attorneys for Plaintiff

**DEASEY, MAHONEY & VALENTINI, LTD.**
BY:  George R. Zacharkow
　　　Identification No. 32816
1601 Market Street, 34th Floor
Philadelphia, PA 19103
(215) 587-9400 (phone)
(215) 587-9456 (fax)
Email:  GZacharkow@dmvlawfirm.com

<div align="center">

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

</div>

**HDI GLOBAL INSURANCE COMPANY**　　　　　　**CIVIL ACTION**
161 North Clark Street, 48th Floor
Chicago, Illinois 60601

　　　　　　*Plaintiff*

　　v.

**SILVER BIRCH GP, LLC**　　　　　　　　　　**NO.**
510 Walnut Street
Philadelphia, Pennsylvania 19106

　　　　　　*Defendant*

<div align="center">

### COMPLAINT IN ADMIRALTY

</div>

　　　　Plaintiff, HDI Global Insurance Company, by and through its attorneys, Deasey,

Mahoney & Valentini, Ltd., hereby brings this civil action against Defendant, Silver

Birch GP, LLC, and in support thereof represents upon information and belief, as

follows:

<div align="center">

### JURISDICTION AND VENUE

</div>

　　　　1.　　　This is an admiralty and maritime claim for breach of a maritime contract

and this Court has jurisdiction pursuant to 28 U.S.C. §1333. Plaintiff designates the claim

<div align="center">1</div>

as an admiralty and maritime claim within the scope and meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.     The claim involves a contract for the carriage of goods by sea in foreign trade from a port in China to a port in the United States of America and as such, it is governed by the U.S. Carriage of Goods by Sea Act, ("COGSA"), 46 U.S.C. § 30701, *et seq*. (note) and the Harter Act, 46 U.S.C. § 30702, *et seq*., and this Court also has jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.     The Bills of Lading issued by Defendant contain a forum selection clause providing that claims against Defendant regarding shipments of goods to the United States are required to be brought in the United States District Court for the Eastern District of Pennsylvania. (See Exhibit 1, ¶ 17.)

## THE PARTIES

4.     Plaintiff, HDI Global Insurance Company (hereinafter "Plaintiff" or "HDI") was and still is a corporation organized and existing under the laws of the State of Illinois, with an address and principal place of business at 161 North Clark Street, 48th Floor, Chicago Illinois. HDI is engaged in the insurance business and in pertinent part, provides insurance for shipments carried in ocean transportation.

5.     Crocs, Inc. (hereinafter "Crocs"), was and still is a corporation organized and existing under the laws of the State of Colorado with an address and principal place of business at 13601 Via Varra, Bloomfield, Colorado, and was and still is engaged in the business of purchasing, importing and distributing footwear in the United States.

6.     Crocs was the purchaser and consignee of the shipments at issue and Plaintiff insured the shipments.

2

7.      Crocs presented a claim to Plaintiff for the nondelivered shipments (as more fully described below) and appointed Plaintiff to serve as its recovery agent.

8.      After investigating and adjusting the claim, Plaintiff paid Crocs the sound market value of the nondelivered shipments and became a subrogee of Crocs.

9.      Also, following payment of the insurance claim Crocs assigned the recovery rights for the claim to Plaintiff.

10.     Defendant, Silver Birch GP, LLC (hereinafter "Silver Birch"), was and still is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with an office and place of business located at 510 Walnut Street, Philadelphia, Pennsylvania, and was a non-vessel owning common carrier (NVOCC) who issued Bills of Lading for the shipments at issue. (See Exhibit 1.)

11.     Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the shipments and consignments at issue, as their respective interests may ultimately appear, and Plaintiff is entitled to maintain this action.

12.     Crocs, and any and all other parties in interest, have duly performed all valid conditions precedent to the contracts of carriage on their part to be performed and all conditions precedent to recovery under the identified Bills of Lading have occurred or have been performed by Crocs and/or its predecessors or successors in title, or have been waived or otherwise excused.

13.     Timely and consecutive extensions of suit time were obtained from Silver Birch and this action is being filed within the agreed extension period, which runs to September 30, 2023. Silver Birch also obtained back to back extensions of suit time from

3

the ocean carrier with respect to its claim against them.

## **RELEVANT FACTS**

14.     Sometime prior to November 19, 2020, shipments of footwear stuffed into four containers (hereinafter the "Shipments") were booked with Silver Birch for ocean carriage from the Port of Yantian, China to the Port of Long Beach, California.

15.     Silver Birch elected to transport the Shipments aboard the containership M/V ONE APUS (hereinafter the "Vessel").

16.     On or about November 19, 2020, the Shipments, consisting of 3,261 cartons of footwear, then being in good order and condition, were loaded aboard the Vessel.

17.     On or about November 19, 2020, Silver Birch issued the following two Bills of Lading, acknowledging receipt of the Shipments on board the Vessel for the agreed carriage to the Port of Long Beach, California:

      a.  Bill of Lading No. CSZE0105163

          i.  Container No. KKFU8059750 -- 873 cartons

          ii.  Container No. NYKU4811031 -- 727 cartons

          iii.  Container No. ONEU0347022 -- 726 cartons

      b.  Bill of Lading No. CSZE0105171

          i.  Container No. GESU6328795 -- 935 cartons

(See Exhibit 1.)

18.     Correspondingly, Silver Birch received the following two Master Bills of Lading from the ocean carrier acknowledging receipt of the Shipments on board the Vessel for the agreed carriage to the Port of Long Beach, California: Bill of Lading No.

ONEYSZPAJ8879901 and Bill of Lading No. ONEYSZPAJ8879900.

19.     The M/V ONE APUS departed the Port of Yantian, China on or about November 19, 2020, with the Shipments on board, destined for the Port of Long Beach.

20.     During the voyage the stow of containers on deck shifted and collapsed with many of them going overboard.

21.     Thereafter, the Vessel diverted to Kobe, Japan and never continued the voyage to Long Beach.

22.     The Shipments were lost overboard and were not delivered to the consignee at the Port of Long Beach.

23.     The sound market value of the Shipments was One Million One Hundred Forty-Four Thousand Fifty-Three Dollars ($1,144,053.00), exclusive of prejudgment interest, and costs. Plaintiff reserves the right to revise this amount.

### COUNT I
### (Breach of Contract)

24.     Plaintiff incorporates by reference the averments contained in paragraphs 1 – 23, inclusive, with the same force and effect as if fully set forth herein.

25.     Defendant Silver Birch contracted to transport and deliver the Shipments from the Port of Yantian to the Port of Long Beach in the same quantity, good order and condition as when received by it and/or its agents and/or representatives and/or designees at the load port, as evidenced by the Bills of Lading attached hereto as Exhibit 1.

26.     Defendant Silver Birch directly, and/or by and through the agents and/or representatives and/or designees it selected to carry out its responsibilities and for whom it is responsible, breached its contractual and statutory duties to exercise due diligence

to ensure that the Vessel was seaworthy and cargo-worthy and fit to safely transport the Shipments through the known and reasonably expected conditions to be encountered during the voyage, to outfit the Vessel with competent officers and crew to navigate her and ensure that the Shipments and other cargo were properly loaded, stowed, and secured aboard the Vessel; and to deliver the Shipments at the agreed destination in the same quantity, good order and condition as when received.

27. The loss of the Shipments was not caused by any act or omission on the part of Plaintiff's subrogor or those for whom it may be responsible, or by its predecessors or successors in title, but instead was caused by the inadequacy and unseaworthiness of the Vessel and the violation of Defendant's duties and obligations as a common carrier by water for hire under the applicable statutes, and/or private carrier by water for hire, and the breach of Defendant's contracts of carriage and any other applicable contracts, including specifically the Bills of Lading attached hereto as Exhibit 1.

28. By reason of Defendant's breach of its contracts of carriage and other agreements with Plaintiff's subrogor and/or other parties in interest, and/or the inadequacy and unseaworthiness of the M/V ONE APUS, and/or the failure of Defendant, and/or the agents and/or representatives and/or designees for whom it is responsible, to comply with applicable laws and regulations, contractual obligations, and/or customs and trade practice, and/or to properly care for the Shipments, Plaintiff as subrogee and assignee of Crocs, has sustained damages in the amount of One Million One Hundred Forty-Four Thousand Fifty-Three Dollars ($1,144,053.00), exclusive of prejudgment interest and costs.

WHEREFORE, Plaintiff, HDI Global Insurance Company, respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Silver Birch GP, LLC, for the damages as aforesaid, plus prejudgment interest and costs, and that the Court grant such other and further relief to Plaintiff as in law and justice it may be entitled to receive.

## COUNT II
### (Bailment)

29.      Plaintiff incorporates by reference the averments contained in paragraphs 1 – 23, inclusive, with the same force and effect as if fully set forth herein.

30.      At all times material hereto Defendant Silver Birch was a bailee for hire.

31.      Sometime prior to November 19, 2020, Defendant Silver Birch agreed to accept the Shipments at the Port of Yantian, China and deliver them to Crocs at the Port of Long Beach, California.

32.      On or about November 19, 2020, Defendant Silver Birch through its selected and appointed agents and/or representatives and/or designees and/or others for whom it is vicariously liable, received the Shipments at the Port of Yantian, China and thereafter exercised control over the Shipments.

33.      Defendant Silver Birch thereafter delivered the Shipments to the Vessel, its owner and/or operator, and/or others acting on their behalf, to conduct the ocean carriage and deliver the shipments at the Port of Long Beach, California.

34.      Defendant Silver Birch confirmed its receipt of the Shipments by issuing the Bills of Lading attached hereto as Exhibit 1 and the ocean carrier confirmed its receipt of the Shipments by issuing Master Bill of Lading Nos. ONEYSZPAJ8879901

7

and ONEYSZPAJ8879900.

35.     The Shipment was to be delivered to Plaintiff's subrogor at the Port of Long Beach.

36.     Defendant Silver Birch never delivered the Shipment to Plaintiff's subrogor at the Port of Long Beach as agreed and never delivered the Shipment at any other location.

37.      Defendant Silver Birch breached its duty as a bailee by failing to redeliver the Shipment when and where agreed and requested.

38.     As a direct and proximate result of Defendant Silver Birch's breach of its duty as a bailee, Plaintiff as subrogee and assignee of Crocs has sustained damages in the amount of One Million One Hundred Forty-Four Thousand Fifty-Three Dollars ($1,144,053.00), exclusive of prejudgment interest and costs.

WHEREFORE, Plaintiff, HDI Global Insurance Company, respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Silver Birch GP, LLC, for the damages as aforesaid, plus prejudgment interest and costs, and that the Court grant such other and further relief to Plaintiff as in law and justice it may be entitled to receive.

**DEASEY, MAHONEY & VALENTINI, LTD.**

BY:   /s/ George R. Zacharow
       George R. Zacharkow (GRZ  7099)
Dated:  December 21, 2022         Attorneys for Plaintiff

## EXHIBIT 1

# Silver Birch GP, LLC

| SHIPPER (Principal or Seller-licensee and address) | B/L Number | DATE OF ISSUE |
|---|---|---|
| EVERVAN SHUANGFENG FOOTWEAR CO LTD. ON BEHALF OF EVA WORLDWIDE TRADING CO LTD. TECHNOLOGY INDUSTRY ZONE, ECONOMIC & DEVELOPMENT DISTRICT SHUANGFENG COUNTY HUNAN, CHINA | CSZSE0105163 | 19 NOV 2020 |

**EXPORT REFERENCES/FORWARDING AGENT (Reference)**

Shipper Ref    :
Consignee Ref  :
PO Ref         :
Job Ref #      : CSZSE0105163

| CONSIGNEE (Non-Negotiable unless consigned to order) |
|---|
| CROCS, INC. 13601 VIA VARRA BROOMFIELD CO 80020 UNITED STATES PH: 303 848-7629 (IRS# 20-2164234-00) |

**POINT AND COUNTRY OF ORIGIN**
CHINA

| NOTIFY PARTY/INTERMEDIATE CONSIGNEE (Name and address) |
|---|
| VANDERGRIFT INC 180 E. OCEAN BLVD STE 270 LONG BEACH, CA, 90802 562.624.3000 EXT. 7808 CROCS@VANDEGRIFTINC.COM, LGBDOCS@VANDEGRIFTINC.COM |

**DELIVERY AGENT AT DESTINATION**
BDP INTERNATIONAL INC
100 CONCORD ROAD
ASTON, PA 19014
ASTON.SILVERBIRCH@BDPINT.COM

| FEEDER VESSEL | PLACE OF RECEIPT |
|---|---|
|  | YANTIAN |

| EXPORT CARRIER (Vessel, voyage, & flag) | PORT OF LOADING |
|---|---|
| ONE APUS V.006E | YANTIAN |

| PORT OF DISCHARGE | PLACE OF DELIVERY |
|---|---|
| LONG BEACH, CA | LONG BEACH, CA |

| MARKS AND NUMBERS | NO of PKGS | DESCRIPTION OF PACKAGES & GOODS PARTICULARS FURNISHED BY SHIPPERS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| KKFU8059750 /CNBD84357 | /40'HC  /CY/CY  /873 CTNS / | | 4,732.614 KGS / | 66.007 CBM |
| NYKU4811031 /CNBC71985 | /40'HC  /CY/CY  /727 CTNS / | | 3,319.620 KGS / | 65.952 CBM |
| ONEU0347022 /CNBC76836 | /40'HC  /CY/CY  /726 CTNS / | | 3,844.774 KGS / | 62.111 CBM |
| | | SHIPPER'S LOAD & COUNT & SEAL S.T.C. : - MARKS & NOS. & DESCRIPTION OF GOODS AS PER LIST ATTACHED. | | |
| | 2,326    CTNS | | 11,897.008 KGS | 194.070 CBM |

THIS SHIPMENT DOES NOT CONTAIN WOOD PACKAGING MATERIAL.
EXPRESS BILL OF LOADING
FREIGHT COLLECT                    SHIPPED ON BOARD :19 NOV 2020
Total : THREE (3X40'HC) CONTAINER(S) ONLY

**       Page 1 of 2       **

| FREIGHT RATES , CHARGES, WEIGHTS AND/OR MEASUREMENT SUBJECT TO CORRECTIONS |
|---|

Received by the Carrier the Goods, Packages or Containers said to be as specified above and in apparent good order and condition unless otherwise stated, to be transported to such places as provided herein and subject to all the terms and conditions appearing on front and reverse side of this Bill of Lading to which the Shipper agrees by accepting this Bill of Lading. The description and particulars of the Goods, Packages or Containers and the weight, measure, quantity, condition, contents and value thereof as stated above are furnished by the Shipper, and Carrier shall have no responsibility or liability regarding such information. One paragraph 11 on the reverse side of this Bill of Lading as to principle of Packages and Paragraph 8 as to Dangerous Goods.

IN WITNESS WHEREOF, 3 original Bills of Lading have been signed if not otherwise stated before, one of whichbeing accomplished, the others to be void prepared by the Carrier one (1) original bill of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order.

For And On behalf of
BDP INTERNATIONAL LTD. (CHINA), SHENZHEN BRANCH

AS AGENT FOR THE CARRIER
Silver Birch GP, LLC

**Bill of Lading attachment Page 2 of 2.**          (CSZSE0105163)

SHIPPER'S LOAD & COUNT & SEAL S.T.C. :-

KKFU8059750

|  | FROM:        TO: | 873 |  | 4,732.614 KGS 66.007  CBM |
|---|---|---|---|---|
|  | CPO: | CTNS | FOOTWEAR(WOMEN'S SHOES) |  |
|  | DESC: |  | PO NUMBER:4500971191, |  |
|  | SKU: |  | 4500983095,4500983096, |  |
|  | QUANTITY: |  | 4501001913,4501001919, |  |
|  | CARTON: |  | 4501022833. |  |
|  |  |  | HS CODE:640299 |  |

NYKU4811031

|  | FROM:        TO: | 727 |  | 3,319.620 KGS 65.952  CBM |
|---|---|---|---|---|
|  | CPO: | CTNS | FOOTWEAR(WOMEN'S SHOES) |  |
|  | DESC: |  | PO NUMBER:4500971193. |  |
|  | SKU: |  | HS CODE:640299 |  |
|  | QUANTITY: |  |  |  |
|  | CARTON: |  |  |  |

ONEU0347022

|  | FROM:        TO: | 726 |  | 3,844.774 KGS 62.111  CBM |
|---|---|---|---|---|
|  | CPO: | CTNS | FOOTWEAR(WOMEN'S SHOES) |  |
|  | DESC: |  | PO NUMBER:4500971190, |  |
|  | SKU: |  | 4500971193,4500986085, |  |
|  | QUANTITY: |  | 4500986086,4501001912, |  |
|  | CARTON: |  | 4501001914,4501001915, |  |
|  |  |  | 4501001916,4501001917, |  |
|  |  |  | 4501001918,4501004029. |  |
|  |  |  | HS CODE:640299 |  |

NOTIFY PARTY 2
DAMCO DISTRIBUTION SERVICE
12801 EXCELSIOR DR.
SANTA FE SPRINGS, CA 90670
USA
PHONE (1) 213-514-0091

```
-------- ------------          ------------- -------------
2,326   CTNS                   11,897.008KGS 194.070   CBM
======= ============          ============= =============
```

END OF LISTING...

**1. DEFINITIONS:**

"Carriage" means the whole of the operations and services undertaken or performed by or on behalf of Carrier in respect of the Goods.

"Carrier" means Silver Birch GP, LLC, 510 Walnut Street, Philadelphia, PA 19106, USA, and on whose behalf this Bill of Lading has been signed.

"COGSA" means the Carriage of Goods by Sea Act of the United States of America, as amended, approved on 16th April 1936.

"COGWA" means the Carriage of Goods by Water Act of Canada, as amended, approved on 6th May 1993.

"Container" includes any container, trailer transportable tank, lift van, flat, pallet, or any similar article of transport used to transport goods.

"Goods" means the cargo accepted from the Merchant and includes any Container not supplied by or on behalf of the Carrier.

"Hague Rules" means the rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, August 1924.

"Hague-Visby Rules" means The Hague Rules as amended by the protocol signed at Brussels on 23rd February 1968.

"Merchant" includes the shipper, receiver, consignor, consignee, holder of this Bill of Lading and any Person having a present or future interest in the Goods or any Person acting on behalf of any of the above mentioned Persons.

"Package" is the largest individual unit of partially or completely covered or contained cargo made up by or for the Merchant which is delivered and entrusted to Carrier, including palletized units and each Container packed and sealed by the Merchant or on its behalf, notwithstanding that the Merchant may have furnished a description of the contents of such sealed Container on this Bill of Lading.

"Person" includes an individual, a partnership, a body corporate or other entity.

"Ship" means the vessel named in this Bill of Lading, or any vessel or conveyance owned, contracted for, chartered, or operated by Carrier or used by Carrier for the performance of this contract.

"Shipping Unit" includes the term "unit" as used in The Hague Rules and Hague-Visby rules.

"Port-to-Port Shipment" means a Carriage pursuant to this Bill of Lading where only Ports are designated as the Place of Receipt and Port of Loading and the Place of Delivery and the Port of Discharge.

"Combined Transport" means a Carriage pursuant to this Bill of Lading where a specific "Place of Receipt" in addition to and different from the Port of Loading is designated on the face hereof and/or a specific "Place of Delivery" is designated in addition and different from the Port of Discharge.

**2. CARRIER'S TARIFF:** Goods carried under this Bill of Lading are subject to all terms and conditions of tariffs on file with the Federal Maritime Commission, or any other regulatory agency which governs a particular portion of the Carriage, and the terms are incorporated herein as part of the terms and conditions of this Bill of Lading. Copies of Carrier's tariffs may be obtained from Carrier or its agents upon request. In the case of inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

**3. FREIGHT AND CHARGES:** Freight may be calculated on the basis of the particulars of the Goods furnished by Merchant. In case Merchant's particulars are found to be erroneous and additional freight payable, the Merchant and the Goods shall be liable for any expense incurred for examining, weighing, measuring and valuing the Goods. Quotations as to fees, rates of duties, freight charges, insurance premiums or other charges given by Carrier to Merchant are for informational purposes only and are subject to change without notice and shall under no circumstances be binding upon Carrier unless the Carrier in writing specifically undertakes the handling of transportation of the shipment at a specific rate. Freight and charges shall be deemed fully earned on receipt of Goods by Carrier and shall be paid and non-returnable in any event whether the freight be intended to be prepaid or collected at destination. Payment shall be in full and in cash in the currency named in this Bill of Lading, or another currency at Carrier's option. Interest at 12% shall run from the date when freight and charges are due. If the services of a freight forwarder are used for this transportation those services shall be deemed to be performed as agent of Merchant and payment of freight to the freight forwarder is not payment to Carrier. Full freight shall be paid on damaged or unsound Goods. In any referral for collection or action against the Merchant for monies due to Carrier upon recovery by the Carrier the Merchant shall pay the expenses of collection and litigation including reasonable attorneys fees. Merchant shall be liable for all dues, duties, fines, taxes and charges, including consular fees levied on the Goods and Merchant agrees to reimburse Carrier for any and all advances made by Carrier in Carrier's own discretion. Merchant shall be liable for return freight and charges on the Goods if they are refused export or import by any government. All Persons encompassed within the definition "Merchant" as provided in paragraph 1 of this Bill of Lading shall be jointly and severally liable to Carrier for the payment of all freight and charges, including advances. All Persons encompassed within the definition of "Merchant" as provided in paragraph 1 of this Bill of Lading shall jointly and severally indemnify the Carrier for all claims, fines, penalties, damages, cost and other amounts which may be incurred or imposed upon the Carrier by reason of breach of the Merchants of any of the provisions of this Bill of Lading or any governmental, statutory or regulatory requirements.

**4. MERCHANT'S RESPONSIBILITY:**

A. Merchant warrants that in agreeing to the terms hereof he is, or is the agent of and has authority of, the Person owning or entitled to the possession of the Goods or any Persons who has a present or future interest in the Goods.

B. The description and particulars of the Goods and Packages set out on the face hereof are furnished by Merchant, and Merchant warrants to Carrier that the description and particulars including, but not limited to, weight, content, measure, quantity, quality, condition, marks, numbers and value are correct and Merchant agrees that Carrier shall have no responsibility or liability with respect to such description and particulars and shall indemnify Carrier against all losses arising from any inaccuracy.

C. Merchant shall comply with all applicable laws, regulations and requirements of customs, port and other authorities and shall bear and pay all duties, taxes, fines, imposts, expenses and losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the Goods.

D. Merchant undertakes that the Goods are packed in a manner adequate to withstand the ordinary risks of Carriage having regard to their nature and in compliance with all laws, regulations and requirements which may be applicable. All cargo must be properly and sufficiently packaged to withstand damage due to normal handling in transit, including the rigors of an ocean voyage. Unprotected or insufficiently packed or protected cargo may be accepted by the Carrier for transportation at Merchant's risk of damage.

E. Merchant shall be liable for the loss, damage, contamination, soiling, detention or demurrage before, during and after the Carriage of property (including, but not limited to Containers) of Carrier or any Person or vessel (other than Merchant) caused by Merchant or any Person acting on his behalf or for which Merchant is otherwise responsible.

F. Merchant shall defend, indemnify and hold harmless Carrier against any loss, damage, claim, liability or expense whatsoever arising from any breach of the provisions of this paragraph or from any cause in connection with the Goods for which Carrier is not responsible, including without limitation in connection with attachments, seizures, executions claims or other legal proceedings of any description against the Goods or any proceedings by way of interpleader or otherwise.

**5. CARRIER'S RESPONSIBILITY:**

A. CLAUSE PARAMOUNT: Subject to paragraph 15 below, the liability (if any) of the Carrier in respect to the Goods whether the Carriage is a Port-to-Port Shipment or Combined Transport shall be as follows: 1. If any portion of the Carriage is to or from the United States of America, Carriage of Goods By Sea Act of the United States (COGSA) shall apply and shall govern before loading and after discharge and during the entire time the Goods are in the custody of Carrier. All Carriages under this Bill of Lading to or from Canada shall be subject to Carriage of Goods By Water Act of Canada (COGWA). 2. In any trade that does not involve any Carriage to or from the United States of America or Canada, the Hague Rules (excluding Article 9) shall apply except where the Hague-Visby Rules are compulsorily applicable at the port of loading, in which case the Hague-Visby Rules shall apply. The applicable law shall govern before the Goods are loaded on and after they are discharged from the vessel, whether the Goods are carried on deck or under deck, and throughout the entire time the Goods are in the custody of the Carrier. 3. When Carriage is by Combined Transport, Carrier's liability, if any, for loss or damage occurring during any stage of Carriage, other than at sea or otherwise during any waterborne Carriage, shall be governed by the provisions of any applicable international convention or national law. Should there be no such applicable convention or law, or if it cannot be proven at which stage of the Carriage the loss or damage occurred, the Hague Rules (excluding Article 9) shall apply subject to paragraph B below. 4. Carrier shall be entitled to (and nothing in this Bill of Lading shall operate to deprive or limit such entitlement to) full benefit of, and rights to all limitations of and exclusions from liability and all rights conferred or authorized by any applicable law, statute or regulation of any country and without prejudice to the generality of the foregoing also any law, statute or regulation available to the owner of the vessel(s) on which the Goods are carried. 5. When Carriage is by Port-to-Port Shipment, Carrier shall be under no liability whatsoever for loss or damage to the Goods, howsoever occurring, if such loss or damage arises prior to loading onto or subsequent to discharge from the vessel.

B. GENERAL PROVISIONS: 1. Delay, Consequential Loss: Save as otherwise provided herein, Carrier shall in no circumstances be liable for direct, indirect or consequential loss or damage caused by delay or any other cause whatsoever and howsoever caused. Should Carrier nonetheless be held legally liable for any such direct or indirect losses or consequential damages, such liability shall in no event exceed the freight paid for the transport covered by this Bill of Lading. Carrier shall not be liable for any loss or damage arising from: (a) an act or omission of Merchant or Person acting on behalf of Merchant from whom Carrier took the Goods in charge; (b) compliance with the instructions of any Person authorized to give them; (c) handling, loading, stowage or unloading of the goods by or on behalf of Merchant; (d) inherent vice of the goods; (e) lack or insufficiency of or defective condition of packing in the case of goods, which by their nature, are liable to wastage or damage when not packed or when not properly packed; (f) insufficiency or inadequacy of marks or numbers on the Goods, coverings or unit loads; and (g) any Force Majeure circumstances as described in Paragraph 13. When any claims are paid to Merchant by Carrier, Carrier shall automatically be subrogated to all rights of Merchant against all others, including inland carriers, on account of the losses or damages for which such claims are paid. 2. Package or Shipping Unit Limitation: a. Where COGSA applies to this Bill of Lading (whether by its own force or by agreement), Carrier shall not be liable for loss or damage in an amount exceeding $500 per Package lawful money of the United States, or in case of Goods not shipped in Packages, per Shipping Unit unless the nature and value of the Goods higher than this amount has been declared in writing by Merchant before Carrier's receipt of the Goods and inserted in this Bill of Lading and any extra freight has been paid as required. b. Where COGSA does not apply, but where the Hague Rules or any legislation making such rules compulsorily applicable to this Bill of Lading apply, Carrier shall not, unless a declared value has been noted in accordance with (3) below, be or become liable for any loss or damage to or in connection with the Goods in an amount per Package or Shipping Unit in excess of the Package or Shipping Unit limitation as laid down by such Rules or legislation. c. Where neither COGSA, the Hague Rules, any legislation applying such Rules, nor the Hague-Visby Rules is compulsorily applicable, Carrier's liability shall not exceed US$500 per Package or Shipping Unit. d. Where a Container is packed by the Merchant or on its behalf, and the Container is sealed when received by Carrier for shipment, the Carrier's liability will be limited to US$500 per Container with respect to its contents, except when the Merchant declares the value on the face hereof and pays additional charges on such declared value. e. Carrier shall not be liable for an amount greater than the actual loss to the person entitled to make the claim. 3. Ad Valorem: Declared Value of Package or Shipping Unit: a. Carrier's liability may be increased to a higher value by a declaration in writing of the value of the Goods by the Merchant before delivery to Carrier of the Goods for shipment, such higher value being inserted on the front of this Bill of Lading in the space provided and, if required by Carrier, extra fee paid. In such case, if the actual value of Goods shall exceed such declared value, the value shall nevertheless be deemed to be the declared value and Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value. b. The value of the Goods shall be determined according to the commodity exchange price at the place and time of delivery to Merchant or at the place or time when they should have been so delivered or if there is no such price, according to the current market price by reference to the normal value of Goods of the same kind and quality at such place and time. 4. Designation of Package or Shipping Units: Where a Container is used to consolidate Goods and such Container is packed by Carrier, the number of Packages or Shipping Units stated on the face of this Bill of Lading in the box provided shall be deemed the number of Packages or Shipping Units for the purpose of any limit of liability per Package or Shipping Unit.

**6. CERTAIN RIGHTS AND IMMUNITIES FOR CARRIER AND OTHER PERSONS:**

A. Carrier shall be entitled to subcontract directly or indirectly on any terms the whole or any part of the handling, storage or Carriage of the Goods and all duties undertaken by Carrier in relation to the Goods. Every servant or agent or subcontractor of Carrier shall be entitled to the same rights, exemption from liability, defenses and immunities to which Carrier is entitled and shall be deemed to be parties to the contract evidenced in this Bill of Lading.

B. Merchant shall defend, indemnify and hold harmless Carrier against any claim or liability, and any expense arising therefrom, arising from the Carriage of the Goods insofar as such claim or liability exceeds Carrier's liability under this Bill of Lading.

C. Carrier is entitled to perform the transport in any reasonable manner and by any route including transshipments and may use any means of storage whatsoever. The Ship shall have the liberty to, at any time, adjust navigational instruments, make trial trips, dry dock, go to repair yards, shift berths, take in fuel or stores, embark or disembark any Persons, carry contraband and hazardous goods, sail with or without pilots and save or attempt to save life or property. Delays resulting from such activities shall not be deemed a diversion.

D. Carrier shall use reasonable endeavors to complete transport and to deliver the Goods at the place designated for delivery. If at any time the performance of this contract in the opinion of the Carrier is or will be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind including strike, lockout or other labor unrest, governmental action, war, riots, or social disturbance, loss or quarantine, Carrier has no duty to complete the performance of the contract. Under such circumstances Carrier, whether or not the transport is commenced, may without notice to the Merchant, elect to: (a) treat the performance of this contract as terminated and place the Goods at Merchant's disposal at any place Carrier shall deem safe and convenient, or (b) deliver the Goods at the place of delivery. In any event, Carrier shall be entitled to full freight for any Goods received for transportation and additional compensation for extra costs resulting from the circumstances referred to in this paragraph.

**7. CONTAINERS:**

A. When Goods are not delivered to the Carrier in Containers, the Carrier may pack them in any type Container with other goods. The terms of this Bill of Lading shall govern the responsibility of Carrier in connection with or arising out of the supply of a Container to Merchant, whether supplied before or after the Goods are received by Carrier or delivered to Merchant. The Merchant indemnifies Carrier for any damage or injury to Persons or property caused by Carrier's Containers or other equipment during handling by or when in possession or control of the Merchant, his agents or sub-contractors engaged by or on behalf of the Merchant. Merchant undertakes to return such Containers and other equipment to Carrier within the time provided for in Carrier's applicable tariff, otherwise Merchant shall pay carrier for the demurrage or detention charges incurred by the Containers or other equipment.

B. When Carrier receives the Goods already packed into Containers, this Bill of Lading is prima facie evidence of the stated number of Containers set forth on the face hereof, and that number only. Carrier accepts no responsibility and shall have no liability with respect to the order and condition of the contents of the Containers. Merchant warrants that the cargo stowage and the seals of the Containers are safe and proper and suitable for handling and Carriage. Delivery shall be deemed as full and complete when the Containers are delivered by the Carrier with their seals intact. Carrier has the right, but is under no obligation, to open and inspect the Containers or Packages at any time without notice to the Merchant, and expenses resulting from such inspection shall be borne by the Merchant. The Merchant shall inspect Containers before stuffing them and the use of the Containers shall be prima facie evidence of their being sound and suitable for use.

C. If a Container has been packed by or on behalf of Merchant: 1. Carrier shall not be liable for loss of or damage to the Goods: a. caused by the manner in which the Container has been packed; b. caused by the unsuitability of the Goods for Carriage in Containers; c. caused by the unsuitability or defective condition of the Container provided that where the Container has been supplied by or on behalf of Carrier, this paragraph (c) shall only apply if the unsuitability or defective condition arose (1) without any want of due diligence on the part of the Carrier, or (2) would have been apparent upon reasonable inspection by Merchant at or prior to the time when the Container was packed. d. if the Container is not sealed at the commencement of the Carriage except where the Carrier has agreed to seal the Container. 2. Merchant shall defend, indemnify and hold harmless Carrier against any loss, damage, claim, liability or expense whatsoever arising from one or more of the matters covered by 7.C.1. above except as otherwise provided in 7.C.1. (c) above.

D. Where Carrier is instructed to provide a Container in the absence of a written request to the contrary, Carrier is not under obligation to provide a Container of any particular type or quality.

**8. DANGEROUS GOODS:** Merchant may not tender goods of a dangerous nature without written application to Carrier and Carrier's acceptance of the same. In its application, Merchant must describe in the Goods with reasonable specificity and state the names and addresses of shippers and consignees. The Carrier has absolute discretion to reject such cargo. The Merchant shall distinctly and permanently mark the nature of the Goods on the outside of the Package and Container as required by law or regulation and shall submit to the Carrier or appropriate authorities all necessary documents required by law or by Carrier for the transportation of such Goods. Should the Goods later become a danger to Carrier, Ship, or other cargo, as determined by Carrier, Carrier may destroy, abandon, render harmless or otherwise dispose of such Goods without liability and without compensating Merchant, and Merchant shall indemnify Carrier for any loss or expenses arising from such action. Merchant shall indemnify and hold Carrier harmless from all direct and consequential damages whatsoever attributable to or arising out of the transport of dangerous, hazardous or restricted articles.

**9. PERISHABLE CARGO:** Goods of a perishable nature shall be carried in ordinary Containers without special protection services or other measures unless there is noted on the front of this Bill of Lading that the Goods will be carried in a refrigerated, heated, electrically ventilated, or otherwise specially equipped Container or are to receive special attention in any way. The Merchant undertakes not to tender for transportation any Goods which require refrigeration without giving written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the Goods by the Carrier. In case of refrigerated Containers packed by or on behalf of the Merchant, the Merchant undertakes that the Goods have been properly stowed in the Container and that the thermostatic controls have been adequately set before receipt of the Goods by the Carrier. The Merchant's attention is drawn to the fact that refrigerated Containers are not designed to freeze down cargo which has not been presented for packing at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo presented at a higher temperature than that required for the transportation. If the above requirements are not complied with, the Carrier shall not be liable for any loss of or damage to the Goods whatsoever. Carrier shall not be held liable for damage or loss to Goods from defects, faults, break down, stoppage of the temperature controlling machinery, plant, insulation or any apparatus of the Container used to transport the Goods not owned by the Carrier.

**10. DECK CARGO AND CONTAINERIZATION:** Merchant and Carrier agree that Carrier has the right to carry the Goods in any Container under deck or on deck without notice to the Merchant, and such stowage shall not be considered a deviation. Carrier is not required to note "on deck stowage" on the face of this Bill of Lading. When it is common practice in a particular trade, or if the cargo is stowed in Containers, Merchant and Carrier agree that the Carrier is entitled to carry the Goods on deck. Any Goods so carried shall constitute under deck stowage for all purposes including the General Average, COGSA, COGWA, Hague, and Hague-Visby. Except as otherwise provided by any applicable law, if this Bill of Lading states that the cargo is carried on deck, then the Carrier shall not be liable for any non-delivery, misdelivery, delay or loss to Goods carried on deck, regardless of the cause.

**11. HEAVY LIFT AND OVERWEIGHT PACKAGES:** Single Packages with a weight exceeding 2,240 pounds gross not presented to Carrier in enclosed Containers must be declared in writing by Merchant before receipt of the Packages by Carrier. The weight of such Packages must be clearly and legibly marked on the outside of the Packages in letters and figures not less than two inches high. If Merchant fails to comply, Carrier shall not be liable for any loss of or damage to the Goods, Persons or property resulting from such failure. Merchant agrees to comply with all laws or regulations applicable to overweight Containers during the Carriage. Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of Merchant's failure to comply with this section.

**12. DELIVERY:** Carrier shall have the right to deliver the Goods, or part thereof, at any time or at any port or place (whether or not named on the face hereof) and store the Goods at such port or place at the sole risk and expense of the Merchant. Any mention on the face of this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder. The Carrier's responsibility shall cease upon delivery or other disposition of the Goods in accordance with applicable governmental authority. If, after discharge and notice, the Goods should remain in Carrier's custody after the time allowed in Carrier's applicable tariff, the Goods may be considered to have been delivered to Merchant, and at Carrier's option, may be stored in the open or under cover at the Merchant's expense. Should the Goods remain unclaimed, or whenever in the Carrier's opinion they become deteriorated, decayed or worthless, the Carrier may, at its sole discretion and subject to its lien without any responsibility attaching to it, sell, abandon, or otherwise dispose of the Goods at the sole risk and expense of the Merchant. The Carrier may receive Goods in less than full Container load amounts and may, in its sole discretion, repack, transport, and deliver the Goods as Full Container Loads. In such instance, the Carrier shall not be liable to Merchant for any damages or costs attributable to such action or any revenues or contributions received. The liberties set out in this paragraph may be invoked by Carrier for any purposes whatsoever whether or not connected with Carriage of the Goods. Anything done in accordance with this paragraph or any delay arising therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation of whatsoever nature or degree.

**13. FORCE MAJEURE CLAUSE:** Without prejudice to any rights or privileges of the Carrier under the Bill of Lading or under applicable provisions of law, in the event of war, hostilities, warlike operations, embargoes, blockades, port congestion, strikes or labor disturbances, regulations of any governmental authority pertaining thereto, or any other official interference with commercial intercourse arising from the above conditions and affecting the Carrier's operations, the carrier reserves the right to cancel any outstanding bookings or contracts of Carriage or to increase the rates if in conformity with the provisions of the Shipping Act 1984. In addition, Carrier shall not be liable for any loss, delay, damage or liability caused by circumstances beyond its control, including without limitation, acts of God, weather conditions, perils of the sea, mechanical problems or any of the circumstances referenced in the preceding sentence.

**14. DEFAULT PROVISIONS:** In the event of any breach of contract and/or default of payment by Merchant for services provided by the Carrier, then Carrier shall be entitled to any and all remedies available by law or in equity. Additionally, should said breached or defaulted account(s) of Merchant be referred for collection, Merchant, in addition to the amounts owing shall pay: (a) interest as provided in paragraph 3 above; (b) Carrier's actual attorney's fees and costs, incurred in connection with seeking legal action for the purposes of collecting amounts due carrier for services rendered.

**15. NOTICE OF CLAIM AND TIME BAR:** Written notice of claims for loss of or damage to the Goods occurring or presumed to have occurred while in the custody or control of Carrier must be given to Carrier at the port of discharge before or at the time of removal of the Goods by one entitled to delivery. If such notice is not provided, removal shall be prima facie evidence of delivery by the Carrier. If such loss or damage is not apparent, Carrier must be given written notice within three (3) days of delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought in the United States District Court for the Eastern District of Pennsylvania within twelve (12) months after delivery of the Goods, or the date when the Goods should have been delivered, unless such time bar is contrary to any compulsorily applicable international convention or law which shall apply. This time bar for overcharge claims shall be the shorter of that set forth in Carrier's tariff or thirty-six (36) months and of legal effect under the laws of the country having jurisdiction over this contract.

**16. LIEN:** The Carrier shall have a general lien on any and all property (and documents relating thereto) of the Merchant in its possession, custody or control or en route for all claims or charges, expenses or advances incurred by the Carrier in connection with any shipments of the Merchant including all charges applicable to past shipments and general average contributions and if such claim remains unsatisfied for 30 days after demand for its payment is made, the Carrier may sell at public auction or private sale upon 10 days written notice, registered mail to the Merchant the Goods, wares, and/or merchandise or so much as may be necessary to satisfy such lien, and the costs including attorneys fees of recovering the same and apply the net proceeds of such sale to the payment of the amount due the Carrier. Any surplus from such sale shall be transmitted to the Merchant, and the Merchant shall be liable for any deficiency in the sale.

**17. LAW AND JURISDICTION:** This Bill of Lading shall be construed according to the laws of the United States and the State of Pennsylvania and the Merchant agrees that any suits against the carrier shall be brought in the United States District Court for the Eastern District of Pennsylvania. Carrier reserves the right to bring suit against the Merchant at Merchant's domicile. Each party shall bear their own legal fees and related charges and expenses incurred relating to any lawsuit and litigation.

**18. PARTIAL INVALIDITY:** If any provision in this Bill of Lading is held to be invalid or unenforceable by any court regulatory or self regulatory agency body such invalidity or unenforceability shall attach only to such provision. The validity of the remaining provisions shall not be affected thereby and this Bill of Lading contract shall be carried out as if such invalid or unenforceable provisions were not contained herein.

**19. GENERAL AVERAGE:** General Average may be adjusted at any port or place at the Carrier's option and settled according to the York-Antwerp Rules 1974 and may cover all Goods whether carried on or under deck. The Merchant shall indemnify the Carrier in respect of any claims of a General Average nature which may be made on the Carrier and shall provide such security as may be required by the Carrier in this connection. Such security, including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon shall, if required, be submitted to the Carrier prior to the delivery of the Goods. Carrier shall be under no obligation to take any steps whatsoever to collect security for General Average contributions due to Merchant.

**20. BOTH-TO-BLAME COLLISION CLAUSE:** If the vessel on which the Goods are carried (the carrying vessel) comes into collision with any other vessel or object (the non-carrying vessel or object) as a result of the negligence of the non-carrying vessel or object or the owner of, charterer of, or Person responsible for the non-carrying vessel or object, Merchant undertakes to defend, indemnify and hold harmless Carrier against all claims by or liability to (and any expenses arising therefrom) any vessel or Person in respect of any loss of, or damage to, or any claim whatsoever of Merchant paid or payable to Merchant by the non-carrying vessel or object or the owner of, charterer of or Person responsible for the non-carrying vessel or object and set off, recouped or recovered by such vessel, object or Person(s) against Carrier, the carrying vessel or her owners or her charterers.

21. VARIATION OF THE CONTRACT: No servant or agent of the Carrier shall have power to waive or vary any of the terms hereof unless such variation is in writing and is specifically authorized or ratified in writing by a director or officer of Carrier who has the actual authority of Carrier so to waive or vary.

22. CLAIMS IN TORT: The defences and limits of liability provided for in these terms and conditions shall apply in any action against the Carrier for loss or damage to Goods whether the action be founded in contract or in tort.

23. U.S. EXPORTS: Where applicable, Merchant represents that these commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

**A FULL SIZE PRINTED VERSION IS OBTAINABLE FROM THE CARRIER UPON REQUEST.**

# Silver Birch GP, LLC

| SHIPPER (Principal or Seller-licensee and address) | | B/L Number | DATE OF ISSUE |
|---|---|---|---|
| DAMCO O/B FREETREND TECHNOLOGY (SHEN ZHEN) CO,.LTD NO.322,YUAN HU ROAD,ZHANG-BEI INDUSTRIAL DISTRICT,XIN-LIAN COMMUNITY,LONG-GANG ZONE,SHENZHEN CITY,GUANGDONG PROVINCE,CHINA | | CSZSE0105171 | 19 NOV 2020 |

**EXPORT REFERENCES/FORWARDING AGENT (Reference)**

Shipper Ref   :
Consignee Ref  :
PO Ref     :
Job Ref #     : CSZSE0105171

**CONSIGNEE (Non-Negotiable unless consigned to order)**

CROCS, INC.
13601 VIA VARRA BROOMFIELD CO 80020 UNITED STATES
PH: 303 848-7629
(IRS# 20-2164234-00)

**POINT AND COUNTRY OF ORIGIN**
CHINA

**NOTIFY PARTY/INTERMEDIATE CONSIGNEE (Name and address)**

VANDERGRIFT INC
180 E. OCEAN BLVD STE 270
LONG BEACH, CA, 90802
562.624.3000 EXT. 7808
CROCS@VANDEGRIFTINC.COM,
LGBDOCS@VANDEGRIFTINC.COM

**DELIVERY AGENT AT DESTINATION**

BDP INTERNATIONAL INC
100 CONCORD ROAD
ASTON, PA 19014
ASTON.SILVERBIRCH@BDPINT.COM

| FEEDER VESSEL | PLACE OF RECEIPT |
|---|---|
| | YANTIAN |
| EXPORT CARRIER (Vessel, voyage, & flag) ONE APUS V.006E | PORT OF LOADING YANTIAN |
| PORT OF DISCHARGE LONG BEACH, CA | PLACE OF DELIVERY LONG BEACH, CA |

| MARKS AND NUMBERS | NO of PKGS | DESCRIPTION OF PACKAGES & GOODS PARTICULARS FURNISHED BY SHIPPERS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| GESU6328795 /CNAU13153 | /40'HC | /CY/CY  /935 CTNS / | 5,165.710 KGS / | 65.284 CBM |
| | | SHIPPER'S LOAD & COUNT & SEAL S.T.C. : - MARKS & NOS. & DESCRIPTION OF GOODS AS PER LIST ATTACHED. | | |
| | 935 | CTNS | 5,165.710 KGS | 65.284 CBM |

THIS SHIPMENT DOES NOT CONTAIN WOOD PACKAGING MATERIAL.
EXPRESS BILL OF LOADING
FREIGHT COLLECT                SHIPPED ON BOARD :19 NOV 2020
Total : ONE (1X40'HC) CONTAINER(S) ONLY

**     Page 1 of 2     **

**FREIGHT RATES , CHARGES, WEIGHTS AND/OR MEASUREMENT SUBJECT TO CORRECTIONS**

Received by the Carrier the Goods, Packages or Containers said to be as specified above and in apparent good order and condition unless otherwise stated, to be transported in such places as permitted herein and subject to all the terms and conditions appearing on front and reverse side which is this Bill of Lading to which the Shipper agrees by accepting this Bill of Lading. The description and particular of the Goods, Packages or Containers and the weight, measure, quantity, condition, contents, and value thereof as stated above are furnished by the Shipper, and Carrier shall have no responsibility or liability regarding such information. See paragraph 11 on the reverse side of this Bill of Lading as to prerequisite Packages and Paragraph 8 as to Dangerous Goods.

IN WITNESS WHEREOF, 3 original Bills of Lading have been signed if not otherwise state below, one of which being accomplished, if others, if any, to be void. If required by the Carrier, one (1) original Bill of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order.

For And On behalf of
BDP INTERNATIONAL LTD. (CHINA)., SHENZHEN BRANCH

AS AGENT FOR THE CARRIER
Silver Birch GP, LLC

Limitation on Carrier's Liability/Shipper's Ad Valorem Option. The Carrier shall in no event be or become liable for any loss of damage to or in connection with the transportation of the Goods in an amount exceeding US $500 per Package or customary freight unit or Container as provided on the reverse side hereof, unless the nature and value of such goods have been declared by the Shipper before shipment and inserted in this Bill of Lading and the Carrier's ad valorem freight charge paid. Such declared value stated shall not, however, be conclusive on the Carrier for purposes of determining the extent of the Carrier's liability. Shipper desires to have a valuation in excess of said US $500 per Package or customary freight unit or Container on any other applicable limitation, the Shipper must so at rates such value in this Bill of Lading below and such additional limit will be attorned by the Carrier only upon payment of the Carrier's ad freight charge.

**Bill of Lading attachment Page 2 of 2.**

(CSZSE0105171)

SHIPPER'S LOAD & COUNT & SEAL S.T.C. :-

GESU6328795

```
     FROM:
     TO:
     CPO:
     DESC:
     SKU:
     QUANTITY:
     CARTON:
```

```
935                           5,165.710 KGS 65.284  CBM
CTNS    FOOTWEAR
        CHARMS
        HTS CODE:6402993165,
        6402993177,6402998061,
        6402999065,6404193960,
        7117907500.


        PO LIST SEE ATTACHMENT



NOTIFY PARTY2
DAMCO DISTRIBUTION SERVICE
12801 EXCELSIOR DR.
SANTA FE SPRINGS, CA 90670
USA
PHONE (1) 213-514-0091
```

```
935       CTNS                5,165.710 KGS 65.284   CBM
```

END OF LISTING...

Silver Birch OF, LLC - BILL OF LADING — TERMS AND CONDITIONS

**I. DEFINITIONS.**

**2. CARRIER'S TARIFF:**

**3. FREIGHT AND CHARGES:**

**4. MERCHANT'S RESPONSIBILITY:**

**5. CARRIER'S RESPONSIBILITY:**

**6. CARRIER'S RESPONSIBILITY:**